ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>RECURRIDA<br><br>V.<br><br>JOSÉ A. LLANOS MARCANO<br><br>RECURRENTE | KLRA202400088 | Solicitud de Revisión Administrativa procedente de la Oficina de Ética Gubernamental<br><br>Caso Núm. 22-27<br><br>Sobre:<br>Violación a los incisos (b), (g) y (s) del Artículo 4.2 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortíz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

Comparece la parte recurrente, José A. Llanos Marcano (en adelante, ¨señor Llanos Marcano¨ o ¨Recurrente¨) mediante recurso de revisión administrativa y solicita que revisemos la *Resolución* emitida el 28 de diciembre de 2023 por la Oficina de Ética Gubernamental (en adelante, ¨OEG¨ o ¨Recurridos¨). Mediante el referido dictamen, el foro recurrido determinó que el señor Llanos Marcano incurrió en violaciones a los incisos (b) y (g) del Artículo 4.2 de la Ley Núm. 1 de 3 de enero de 2012, según enmendada, mejor conocida como *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico* (en adelante, ¨Ley Núm. 1-2012¨), 3 LPRA sec. 1857a. Por ello, le impuso una multa administrativa de $3,000.00 por cada violación, para un total de $6,000.00.

Por los fundamentos que expondremos a continuación, se *Revoca* el dictamen recurrido.

**I.**

A partir del 1996, el señor Llanos Marcano comenzó labores en la Comisión Industrial de Puerto Rico (en adelante, ¨CIPR¨) y, al inicio de la Querella de epígrafe, ocupaba el puesto de Gerente del Área de Tecnología y Sistemas de Información. Como parte de sus funciones, el señor Llanos Marcano tenía acceso al Sistema de Registro Automatizado de Asistencia (KRONOS), mediante una cuenta *superuser* que le permitía modificar, eliminar o añadir ponches de entrada y salida.

Los hechos de este caso se remontan al 14 de mayo del 2019, cuando la Oficina de Auditoría Interna de la CIPR (en adelante, "OAI") remitió a la entonces Directora Ejecutiva de la OEG el Informe de Auditoría AI-19-03E (en adelante, "Informe") relacionado con el registro de asistencias en KRONOS desde el periodo del 1 de mayo de 2017 al 30 de abril de 2019. Durante la auditoría, los auditores revisaron los registros de asistencias del señor Llanos Marcanos concernientes al precipitado periodo. De acuerdo con los reportes e información obtenida, determinaron que, en los meses evaluados, se habían añadido un total de 132 ponches al registro de asistencias del recurrente utilizando la cuenta de *superuser*. Surge del Informe que, el señor Llanos Marcano expresó haber utilizado la cuenta como un registro de asistencia alterno cuando no podía registrar sus ponches utilizando el reloj ponchador.

Finalizado el proceso investigativo llevado a cabo por la OEG, el 29 de octubre de 2021, los recurridos presentaron una Querella en contra del señor Llanos Marcano por presuntas violaciones a los incisos (b), (g) y (s) del Artículo 4.2 de la Ley Núm. 1-2012, *supra*. La OEG le imputó al señor Llanos Marcano haber realizado cambios a sus ponches de entrada y salida en el sistema electrónico de KRONOS, utilizando la cuenta *superuser*, del 1 de mayo de 2017 al 30 de abril de 2019.

Posteriormente, el 28 de enero de 2022, el recurrente presentó una *Moción Solicitando el Retiro y Desestimación de la Querella* en la cual adujo que la alegación número 6 de la Querella adolecía de vaguedad e

imprecisión al no especificar las fechas en que el señor Llanos Marcano, presuntamente, modificó sus ponches.

El 1 de febrero de 2022, el señor Llanos Marcano presentó una *Segunda Moción Solicitando el Retiro y Desestimación de la Querella* y arguyó que la Querella estaba prescrita por haberse presentado fuera del término que concede la Ley Núm. 1-2012, *supra*. Para ello, el recurrente expuso las normas de prescripción, incuria, los términos jurisdiccionales y de cumplimiento estricto, así como la jurisprudencia interpretativa sobre los procesos de investigación y adjudicación de la OEG dispuestos en la Ley Núm. 1-2012, *supra*.

La OEG se opuso a las mociones de desestimación el 10 de febrero de 2022. Arguyó que, obtuvo dos prórrogas, una durante la investigación preliminar y otra durante la investigación exhaustiva, las cuales le concedían hasta el 10 de noviembre de 2021 para la presentación de la Querella. Por todo lo cual, sostuvo que la Querella fue presentada el 29 de octubre de 2021, dentro del término concedido. Además, alegó, referente a la alegación de vaguedad e imprecisión, que el Artículo 6.5 inciso (b) del Reglamento de Asuntos Pragmáticos de la OEG dispone que la Querella debe contener una "[r]elación sucinta y clara de los hechos constitutivos de la infracción".

Así las cosas, la OEG emitió una *Orden* declarando No Ha Lugar la moción de desestimación.

Luego de varios trámites procesales, el 6, 7 y 28 de febrero de 2023 se celebró en su fondo la Vista Administrativa. Durante la Vista, la OEG presentó la siguiente prueba documental:

> *Exhibit* 1 – *Reglamento de conducta y acciones disciplinarias de la Comisión Industrial de Puerto Rico.*
>
> *Exhibit* 2 – *Certificación requerimiento* 2019-IP-0231 *y anejos.*
>
> *Exhibit* 3 – *Guía Rápida para empleados sistema automatizado de registro de asistencia biométrica workforce timekeeper (KRONOS)* de la CIPR.

Asimismo, presentó el testimonio de Iván Martínez Morales, Rafael Maldonado Muñoz, Norberto D. Díaz Torres, Radamés Figueroa Piñero, Raquel Cumba Sánchez y Yadara Lebrón López.

Por otra parte, el señor Llanos Marcano presentó la siguiente prueba documental:

*Exhibit* 1 – *Certificación* sobre modificación de ponches de 25 de octubre de 2021, suscrita por José Guillermo Figueroa Torres.

*Exhibit* 2 – *Certificación* sobre Sección 9.14 *Reglamentación interna sobre jornada de trabajo y asistencia del reglamento de recursos humanos* de 25 de octubre de 2021, suscrita por José Guillermo Figueroa Torres

*Exhibit* 3 – Correo electrónico del señor Llanos Marcano, dirigido al señor Martínez Morales el 24 de mayo de 2019.

*Exhibit* 4 – Correo electrónico de la señora Cumba Sánchez, dirigido a Diana B. Cordero Díaz el 16 de octubre de 2018.

*Exhibit* 5 – *Orden* de 6 de octubre de 2023 de la CIPR, acompañada del escrito de *Estipulación,* suscrito el 31 de enero de 2023.

Desfilada la prueba, la Oficial Examinadora le concedió un término a las partes para que presentaran sus argumentaciones finales. Presentadas las argumentaciones finales, el 1 de mayo de 2023, se dio por sometido el caso.

El 21 de diciembre de 2023, la Oficial Examinadora de la OEG emitió su Informe. En el mismo, realizó las siguientes determinaciones de hechos:

1. El señor Llanos Marcano inició labores en la CIPR el 1 de junio de 1996 como director de procesamiento electrónico de información. Actualmente, ocupa el puesto de carrera de gerente en la Oficina de Tecnología y Sistemas de Información (OTSI).

2. Entre los puestos que el querellado ha ocupado en la CIPR se encuentra el de director ejecutivo interino y director ejecutivo. Además, desde julio de 2016 al presente ocupó los siguientes puestos:
   - Gerente de la OTSI del 16 de julio 2016 al 8 de enero de 2017.
   - Secretario ejecutivo interino del 9 de enero al 15 de agosto de 2017.
   - Gerente de la OTSI del 16 de agosto al 16 de diciembre de 2017.
   - Destaque en la Corporación del Fondo del Seguro del Estado, del 17 de diciembre de 2017 al 17 de abril de 2018.
   - Gerente de la OTSI del 18 de abril de 2018 al presente.

3. El puesto de gerente de la OTSI que ocupa el querellado en la CIPR está clasificado como exento.

4. El querellado era un servidor público al momento de la ocurrencia de los hechos expuestos en la *Querella*.

5. Durante el periodo del 9 de enero al 15 de agosto de 2017, la supervisora inmediata del querellado era la Lcda. Grace Lozada Crespo, presidenta de la CIPR. A su vez, durante el periodo del 16 de agosto a 16 de diciembre de 2017 y del 18 de abril de 2018 al presente, el supervisor inmediato del querellado ha sido el Sr. Iván Martínez Morales, director ejecutivo de la CIPR.

6. En los periodos antes indicados y como gerente de la OTSI, el querellado era el encargado de dirigir el área y de supervisar al Sr. Radamés Figueroa Piñero y al Sr. Norberto D. Díaz Torres, empleados de dicha oficina. Como parte de esta supervisión, el querellado revisaba las asistencias de sus subalternos, aprobaba los formularios que estos presentaban y autorizaba las licencias correspondientes. Además, ejercía entre otras, las siguientes funciones:
   - Planificar, dirigir, coordinar, supervisar, evaluar y proveer asesoramiento para el funcionamiento, operaciones y servicio que se presta en el OTSI.
   - Interpretar, aplicar correctamente y supervisar el cumplimiento de circulares, reglamentos, manuales y procedimientos emitidos por las agencias reguladoras y fiscalizadoras.
   - Supervisar y monitorear gestiones y trámites del área para verificar y asegurar el cumplimiento con las políticas, normas, procedimientos, reglamentos y normativas emitidas por la CIPR y las agencias reguladoras.
   - Orientar al personal asignado, funcionarios de la CIPR y representantes de las agencias gubernamentales y de empresas privadas sobre las leyes, reglamentos, políticas, normas, procedimientos aplicables a las actividades, procesos y servicios que se prestan en el área.
   - Atender y resolver efectivamente las situaciones y los asuntos que pueden impactar el funcionamiento de la CIPR, área y los servicios que se prestan a los clientes internos o externos, el cumplimiento de las métricas y los resultados esperados.
   - Responsable de la custodia, control de archivos, expedientes y documentos de la CIPR y de los equipos y sistemas mecanizados.
   - Implantar medidas de seguridad y controles para garantizar la confidencialidad y correcta utilización de los equipos y sistemas mecanizados.
   - Supervisar y orientar al personal sobre las normas de asistencia, procedimientos de recursos humanos, funciones y responsabilidades.

7. Durante el periodo de 2017 a abril de 2019, la CIPR utilizaba el Sistema de Registro Automatizado de Asistencia KRONOS Workforce Timekeeper (Kronos) para que los empleados registraran sus asistencias.

8. Todos los empleados de la CIPR tenían que registrar su asistencia de manera biométrica, colocando su huella dactilar en un reloj ponchador.

9. Los empleados de la CIPR no podían registrar su asistencia desde una computadora privada y la CIPR no tenía computadoras portátiles que se utilizaran para esos fines.

10. Cada empleado de la CIPR tenía una cuenta de usuario en Kronos a la que podía acceder para ver su registro de ponches.

11. La OTSI era la encargada de otorgar el acceso a Kronos a los empleados de la CIPR. Además, era la oficina que daba apoyo al Área de Recursos Humanos cuando surgían problemas con el sistema.

12. El acceso que tenían los empleados a su cuenta en Kronos era limitado. Ningún empleado estaba facultado ni autorizado a realizar cambios a sus propios ponches en el sistema.

13. La directora y las analistas del Área de Recursos Humanos tenían unos permisos especiales en Kronos para ver y acceder las asistencias de los demás empleados de la CIPR. Para ello, utilizaban la cuenta que cada una tenía asignada. Asimismo, los supervisores podían acceder a las asistencias de sus subalternos, autorizar algunas licencias y ver los ponches de los empleados que trabajaban bajo su supervisión.

14. En la CIPR se utilizaba el formulario Hoja de Asistencia Semanal para los casos en que los empleados olvidaban realizar un ponche o que, por alguna razón, el ponche no se registró. En estos casos, el empleado tenía que informarlo a su supervisor inmediato, completar el formulario y entregarlo a éste. El supervisor firmaba el formulario y lo refería al Área de Recursos Humanos. Una vez se recibía el formulario, la directora de Recursos Humanos lo aprobaba y las especialistas de dicha área entraban la información en el sistema Kronos con su cuenta.

15. Toda transacción que se realizara en el sistema Kronos con los registros de asistencia tenía que canalizarse a través del supervisor inmediato.

16. Como norma general, no se editaban los ponches en el sistema Kronos.

17. En el caso de que se realizara algún cambio en Kronos en las asistencias de los empleados, el sistema identificaba dicho cambio y la cuenta que se utilizó para realizarlo.

18. Para el periodo de 2017 a 2019, la CIPR contaba con una cuenta de Superuser en el sistema Kronos. Dicha cuenta permitía añadir nuevos usuarios, instalar aplicaciones y configurar dispositivos. Además, permitía añadir, eliminar y modificar los ponches de los empleados de la CIPR. Su uso era para casos estrictamente necesarios.

19. La cuenta de Superuser tenía permisos adicionales a los que tenían las cuentas de los supervisores, de la directora de Recursos Humanos y de las analistas de dicha área.

20. El sistema identificaba cuándo se realizaban cambios o transacciones en las asistencias de los empleados utilizando la cuenta de Superuser.

21. Como empleado de la CIPR, el señor Llanos Marcano tenía que registrar sus asistencias en Kronos.

22. El querellado tenía una cuenta asignada en Kronos bajo el nombre José A Llanos Marcano. Esta cuenta era utilizada por el querellado para aprobar las asistencias de sus subordinados.

23. Además de la cuenta que el querellado tenía asignada bajo su nombre, al ocupar el puesto de gerente de la OTSI, también podía acceder a Kronos mediante la cuenta de Superuser, que le permitía hacer cambios en el registro, modificar, eliminar o añadir ponches de entrada y salida.

24. Durante el periodo de 2017 hasta abril de 2019, los únicos empleados de la CIPR que podían acceder a la cuenta Superuser, aparte del querellado, eran sus subalternos, el señor Figueroa Piñero y el señor Díaz Torres.

25. El uso que realizó el señor Figueroa Piñero a la cuenta de Superuser se limitó a desbloquear cuentas de otros usuarios, crear códigos de pago y trabajar las acumulaciones de licencias (accruals). Por su parte, el señor Díaz Torres, únicamente, utilizó dicha cuenta para desbloquear las cuentas de otros usuarios, en las ocasiones en que el señor Figueroa Piñero no estaba presente.

26. Luego del paso del Huracán María por Puerto Rico en septiembre de 2017, los empleados de la CIPR enfrentaron problemas con el sistema Kronos, mayormente por la falta de energía eléctrica. Además, no se había renovado el contrato con la compañía que se encargaba de atender los problemas técnicos de dicho sistema.

27. A finales del 2018, el señor Martínez Morales, al revisar las asistencias del querellado en Kronos, se percató que se habían añadido, eliminado y/o modificado unos ponches utilizando la cuenta de Superuser.

28. Los cambios que se realizaron en el sistema Kronos a las asistencias del querellado con la cuenta de Superuser, durante el periodo del 1 de mayo de 2017 al 30 de abril de 2019, fueron los siguientes:

[…]

29. Los ponches añadidos, eliminados y/o modificados en el registro de asistencias del querellado no fueron autorizados por su supervisor inmediato, el señor Martínez Morales, ni por el Área de Recursos Humanos.

30. Los cambios en los registros de asistencia del querellado no fueron realizados por el señor Figueroa Piñero ni por el señor Díaz Torres. Inclusive, el señor Díaz Torres desconocía cómo realizar ese tipo de transacción.

31. El 8 de mayo de 2019, el señor Maldonado Muñoz, auditor de la CIPR, entrevistó al querellado con relación al uso de la cuenta Superuser y cómo ésta se utilizó para realizar ponches en su informe de asistencia. Durante la entrevista, el querellado admitió haber realizado dichas transacciones.

32. Existía un retraso en la revisión y aprobación de los registros de asistencias del querellado por parte de su supervisor inmediato.

33. El 24 de mayo de 2019, el querellado le envió un correo electrónico al Sr. Héctor Carbia Fernández, entonces presidente de la CIPR, en el que indicó lo siguiente:

> Lic. Héctor Carbia Fernández, Presidente
>
> Buenas tardes Señor Presidente.
>
> **Asunto: Uso de Clave para Registra (sic) Asistencia**
>
> El pasado 8 de mayo de 2019, recibí la visita del Auditor Interno el Sr. Rafael Maldonado Muñoz, cuyo propósito consistía en entrevistarme relacionado a uso de la clave que tenemos en nuestra oficina para trabajar con el Sistema Kronos. Luego me comento (sic), específicamente, como esa clave se usó para registrar la asistencia en mi informe de asistencia.
>
> Como le explicara al señor Auditor, dicha clave de acceso, como Gerente de la Oficina, fue asignada desde hace más de 24 años, que llevo en la agencia y dirigiendo la oficina. Pero nunca se le ha dado mal uso. Ahora bien, le explique (sic) que desde que sufrimos el embate del pasado huracán María (Septiembre 2017), nuestro sistema sufrió daño (sic) e interrupciones, ya sea por falta de luz y luego por daños a la programación o la configuración de las cuentas por desuso posiblemente.
>
> Esta situación ocasiono (sic) que estuviéramos largos (sic) tiempo si (sic) poder usar los relojes del sistema Kronos. Esto le fue informado tanto a Recursos Humanos como al Director Ejecutivo Interino. La solución que se presentó improvisada, fue (sic) en un principio, firma (sic) un papel o libreta y después se dejó a que simplemente el Supervisor certificara las (sic) asistencia. Posteriormente (sic) logramos poner los relojes a trabajar parcialmente pero con mucha dificultad.
>
> Esto debido a que en la mayoría de las veces sobre, (sic) todo el Personal Gerencial, no le permitía registrar o si le permitía no se le reflejaba correctamente.
>
> Ante dicho escenario, como Oficial principal de la Oficina de OTSI y a cargo del programa decidí buscar nueva (sic) alternativas para registrarla (sic) asistencia y hacer recomendaciones. Entonces comencé a registrar la asistencia a través de la misma computadoras (sic), ante la limitación con el reloj, para eso use (sic) la calve (sic) que me permite acceso el krono (sic). No vi ningún problema, porque mi asistencia es verificada por el Director Ejecutivo, que nunca me informo (sic) que no se debía y Recursos Humano (sic) al menos una vez semanal. De hecho (sic) también se verifico (sic) los manuales y reglamento (sic) y a nuestro entender no creemos que se prohíbe (ponchar a través de la computadora).
>
> De haber habido una violación algún (sic) reglamento y habiéndose informado, créame que hubiéramos desistido. Nosotros no tenemos un ambiente de prueba, por lo que tuvimos que trabajar diariamente con el ambiente real para buscar soluciones.

> Nuestra intención siempre ha sido el mejor servicio. Hemos trabajado con mucha presión para poder llegar a la normalidad lo más pronto posible.
>
> Agradezco su atención y estoy a su orden para cualquier mayor aclaración.
>
> José A. Llanos Marcano
> Gerente
> Oficina de Tecnología y Sistemas de Información
> Comisión Industrial de Puerto Rico
> Tel: (787) 781-0545 Ext. 2355
> e-mail: llanoj01@cipr.pr.gov

34. A partir de mayo de 2019, la cuenta denominada *Superuser* fue cancelada y ningún empleado tiene acceso a la misma.

El 27 de diciembre de 2023, el Director Ejecutivo de la OEG emitió una *Resolución*, notificada el 28 de diciembre de 2023, mediante la cual adoptó en su totalidad el Informe sometido por la Oficial Examinadora y determinó que el señor Llanos Marcano incurrió en violaciones a los incisos (b) y (g) al Artículo 4.2 de la Ley Núm. 1-2012, *supra*. A su vez, acogió la recomendación de la Oficial Examinadora y le impuso al recurrente una multa administrativa de $3,000.00 por cada infracción, por un total de $6,000.00. Por otro lado, desestimó y archivó las imputaciones de violación al inciso (s) del referido Artículo.

El señor Llanos Marcano presentó una *Moción en Solicitud de Reconsideración* el 16 de enero de 2024. El 23 de enero de 2024, el Director Ejecutivo de la OEG emitió una *Resolución en Reconsideración* en la cual denegó la reconsideración solicitada.

Inconforme, el 21 de febrero de 2024, el señor Llanos Marcano presentó una *Solicitud de Revisión* solicitando la revisión de la *Resolución* emitida el 27 de diciembre de 2023 y notificada el 28 de diciembre de 2023. El recurrente realiza los siguientes señalamientos de error:

**Erró el Director Ejecutivo de la OEG al adoptar el Informe de la Oficial Examinadora designada mediante Resolución, el cual no incluyó una determinación final en cuanto a la Orden Interlocutoria del 1 de marzo de 2022 mediante la cual declaró No Ha Lugar la Segunda Moción Solicitando el Retiro y Desestimación de la Querella presentada por la parte querellada por adolecer de prescripción.**

**Erró el Director Ejecutivo de la OEG al adoptar el Informe de la Oficial Examinadora designada mediante Resolución, el cual omitió incluir en sus**

**determinaciones de hechos, hechos materiales no controvertidos por la parte querellante.**

**Erró el Director Ejecutivo de la OEG al adoptar el Informe de la Oficial Examinadora designada mediante Resolución y determinar que la parte querellada incurrió en violación de los incisos (b) y (g), del Artículo 4.2 de la Ley 1-2012, según enmendada al aplicar el quantum de preponderancia de la prueba en vez del quantum vigente de prueba clara, robusta y convincente requerido por el estado de derecho vigente.**

**Erró e incurrió en abuso de discreción el Director Ejecutivo de la OEG al imponer una multa arbitraria e irrazonable de $6,000.00, $3,000.00 por el inciso (b) y $3,000.00 por el inciso (g) al querellado sin justificación válida expresada y sin que la Ley 1-2012 ni el Reglamento de la OEG establezcan criterios y parámetros uniformes para la determinación de las cuantías de las multas impuestas.**

El recurrente arguye que la Querella presentada estaba prescrita por haberse presentado fuera del término dispuesto en el Artículo 7.1 de la Ley Núm. 1-2012, 3 LPRA sec. 1860. Sostiene que la OEG no logró evidenciar que solicitó prórrogas para extender el término de noventa (90) días para efectuar la investigación preliminar y para extender el término de un (1) año para completar la investigación exhaustiva y presentar la querella.

Por otro lado, el señor Llanos Marcano alega que el Director Ejecutivo de la OEG erró al acoger el Informe de la Oficial Examinadora, el cual no incluyó los siguientes hechos no controvertidos sostenidos por el recurrente:

1. Los informes de asistencia oficiales del querellado para el periodo del 2017 a abril de 2019 **no fueron presentados como evidencia por la OEG durante las audiencias** ni fueron objeto del testimonio vertido por los testigos de la parte querellante.

2. La OEG no presentó evidencia de que la Comisión Industrial haya efectuado correcciones en el registro de asistencia del querellado ni en su acumulación de licencias para el periodo del 2017 a abril de 2019.

3. El Sr. Iván Martínez, Supervisor del querellado, testificó que: no le consta que el querellado efectuó los cambios alegados en la querella que surgen del "Time Audit Trail", que nunca se reunió con el querellado para discutir y aclarar las alegadas deficiencias y que se coordinó para aclararlas y corregirlas.

4. El Sr. Rafael Maldonado, Supervisor de Auditoría, testificó que: no discutió ni le mostró el "Time Audit Trail" al querellado durante la entrevista que le hizo, no discutió ni le mostró las alegadas deficiencias, modificaciones o

alteraciones a su registro de asistencia. No llevó ningún documento a la entrevista que le realizó al querellado en la Oficina de Tecnología de Sistemas de Información. El señor Maldonado admitió que no hubo violación a ninguna ley ni reglamento aplicable a la Comisión Industrial; luego de examinar las certificaciones del Director de Recursos Humanos de la Comisión Industrial.

5. La sección 9.14- Reglamentación Interna sobre Jornada de Trabajo y Asistencia del Reglamento de Recursos Humanos dispone la obligación de la Comisión Industrial de adoptar reglamentación interna por escrito estableciendo normas para regir entre otros aspectos el, "b. Métodos de Registro de Asistencia y Formularios para mantener récord apropiado sobre asistencia".

6. La Comisión Industrial, a petición de la OEG, emitió una Certificación, también el 25 de octubre de 2021 que certifica que "no existe procedimiento interno para el ingreso o modificación de ponches de entrada o salida a un Gerente de Área.

7. El 11 de junio de 2019, el entonces presidente de la Comisión Industrial, Lcdo. Héctor Carbia Fernández, le notificó al querellado una intención de medida disciplinaria de suspensión de empleo y sueldo de sesenta (60) días por alegada violación a la Regla 20 del Reglamento de Conductas y Acciones Disciplinarias. Ver Apéndice 12, páginas 376-377. Los hechos que originaron la notificación de la intención de medida disciplinaria en la Comisión Industrial son los mismos hechos que originaron el referido y la querella expedida por la OEG en el caso de autos.

8. El 31 de enero de 2023, el Presidente de la Comisión Industrial y el querellado de epígrafe firmaron una Estipulación mediante la cual la Comisión Industrial retiró la intención de imposición de medida disciplinaria, por violación a la referida Regla 20. La Comisión Industrial presentó una Moción de Desistimiento Voluntario con Perjuicio ante el Oficial Examinador designado para atender el caso. Este emitió una Orden el 6 de febrero de 2023 en la que ordenó el archivo con perjuicio de la intención de medida disciplinaria contra el querellado de epígrafe.

Posteriormente, la OEG presentó su alegato en oposición el 21 de marzo de 2024.

Perfeccionado el recurso y examinado el expediente, estamos en posición de resolver.

## II.

### -A-

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec.

9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* 2023 TSPR 6, resuelto el 20 de enero de 2023. Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las

impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde*, supra. Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas*, supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**-B-**

La OEG fue creada en virtud de la Ley de Ética Gubernamental, Ley Número 12 del 24 de julio de 1985, 3 LPRA sec. 1801 et seq. El referido estatuto, además de preservar y promover la integridad de los servidores públicos y las instituciones gubernamentales, tiene como propósito principal combatir y "prevenir la corrupción en el Gobierno, la

conducta ilegal de los empleados públicos, el abuso de poder y el ejercicio de influencias indebidas por parte de los funcionarios de gobierno". O.E.G. v. Cordero, Rivera, 154 DPR 827, 848 (2001).

La Ley Núm. 1-2012, *supra,* fue aprobada con el propósito principal de renovar y reafirmar la función preventiva y fiscalizadora de la OEG. Como parte de su misión, la OEG tiene la encomienda de fiscalizar la conducta de los servidores públicos y penalizar a los que transgreden la normativa ética que integra los valores del servicio público, mediante los mecanismos y recursos que la Ley provee. 3 LPRA sec. 1855. Conforme surge, el Director Ejecutivo cuenta con "la facultad de imponer sanciones a los infractores de sus disposiciones". *OEG v. Martínez Giraud,* 210 DPR 79 (2022).

Atinente a la controversia ante nos, el Artículo 7.1 de la Ley Núm. 1-2012, *supra,* en lo pertinente, establece:

> (b) **Dentro de los noventa días siguientes a la fecha de presentación del planteamiento, la Oficina realizará una investigación preliminar**. Una vez culminada la investigación preliminar, **si la Oficina entiende que procede efectuar una investigación exhaustiva, debe concluirla dentro del término de un año**. Estos términos son de cumplimiento estricto. **Si existe justa causa, la Oficina prorrogará estos términos hasta noventa días o un año, respectivamente**. […] (Énfasis suplido).

Conforme al precipitado Artículo, la Ley 1-2012, *supra,* establece un término de noventa (90) días para que la OEG lleve a cabo una investigación preliminar, prorrogable por justa causa por un término de noventa (90) días adicionales. Culminada la investigación preliminar, tendrán un término de un (1) año para efectuar una investigación exhaustiva, prorrogable por un plazo adicional de un (1) año si media justa causa.

### III.

En su primer señalamiento de error, el señor Llanos Marcano plantea que el Director Ejecutivo de la OEG erró al no desestimar y archivar la Querella, por haber sido la misma presentada fuera del término prescriptivo que dispone la Ley Núm. 1-2012, *supra.*

Surge del expediente administrativo que, el 14 de mayo de 2019, culminada la auditoría de la CIPR, el Presidente de la CIPR suscribió una

misiva dirigida a la entonces Directora Ejecutiva de la OEG que contenía copia del Informe de Auditoría AI-19-03E sobre el registro de asistencias en KRONOS redactado por la Oficina de Auditoría Interna de la CIPR. La misma establecía que durante el término evaluado, el señor Llanos Marcano había añadido o modificado un total de 132 ponches utilizando la cuenta *superuser* del sistema KRONOS.

La carta fue recibida en la OEG el 14 de mayo de 2019, fecha en que comenzó a transcurrir el término de noventa (90) días que dispone el Artículo 7.1 del referido estatuto, *supra*, para realizar la investigación preliminar. En vista de ello, el término de noventa (90) días que tenía la OEG para culminar la investigación preliminar vencía el 12 de agosto de 2019. Así las cosas, el término para llevar a cabo la investigación exhaustiva y para la presentación de la Querella expiraba el 12 de agosto de 2020.

La OEG sostuvo mediante su oposición a las mociones de desestimación promovidas por el recurrente que se le habían otorgado dos prórrogas, una durante la etapa de investigación preliminar y otra durante la investigación exhaustiva, que extendieron el término prescriptivo hasta el 10 de noviembre de 2021.

Cabe destacar que, la OEG no presentó ante el foro recurrido el expediente investigativo o prueba documental que evidenciara la concesión de las referidas prórrogas. Sin embargo, la Oficial Examinadora tomó como cierto lo alegado por la OEG y declaró No Ha Lugar la moción de desestimación por prescripción.

El señor Llanos Marcano plantea ante esta Curia que erró el Director Ejecutivo de la OEG al acoger lo determinado por la Oficial Examinadora y sostener que la Querella fue presentada dentro de término, sin que mediara evidencia para corroborar la concesión de las alegadas prórrogas.

Por su parte, los recurridos sostienen que la Querella fue presentada dentro de término porque se le habían concedido dos prórrogas durante la etapa investigativa. Además, plantean que la Ley Núm. 1-2012 no requiere que la extensión de los términos de

investigación sea solicitada, sino que la OEG puede extenderlas si entiende que tiene justa causa para ello. Como método de evidenciar la extensión de los términos, la OEG hace referencia a su *Oposición a Moción Solicitando el Retiro y Desestimación de Querella y a Segunda Moción Solicitando el Retiro y Desestimación de Querella* y señala que en la misma expresó haber sido concedido tales prórrogas.

Ciertamente, no surge del expediente administrativo ni de los documentos presentados por las partes evidencia que demuestre si la OEG obtuvo prórrogas que extendieron el término prescriptivo. Una mera alegación por los recurridos, sin prueba que la sostenga, no es suficiente para rebatir la defensa de prescripción levantada por el recurrente. Ante la imposibilidad de corroborar la extensión de los términos, procedía determinar que el término prescriptivo venció el 12 de agosto de 2020, luego de transcurridos los noventa días para culminar la investigación preliminar y el año para realizar la investigación exhaustiva. Por todo lo cual, la Querella fue presentada fuera de término y está prescrita.

Resulta forzoso concluir que erró el Director Ejecutivo al acoger el Informe en su totalidad y sostener que la Querella fue presentada dentro de término.

En consecuencia, y habiéndose cometido el primer error, no es necesario discutir los restantes errores señalados en el recurso.

**IV.**

Por los fundamentos expuestos, se *Revoca* el dictamen recurrido y se desestima la Querella en su totalidad.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones